1

2

THE HONORABLE MARSHA J. PECHMAN

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

9

10

IN RE WASHINGTON MUTUAL, INC.
SECURITIES, DERIVATIVE & ERISA
LITIGATION

No. 2:08-md-1919 MJP

11

12

**MOTION TO DISMISS AMENDED
COMPLAINT BY DEFENDANTS
GOLDMAN, SACHS & CO., CREDIT
SUISSE SECURITIES (USA) LLC,
AND MORGAN STANLEY & CO.
INCORPORATED**

13

_____

14

IN RE WASHINGTON MUTUAL, INC
SECURITIES LITIGATION

15

This document relates to:

**ORAL ARGUMENT REQUESTED**

16

17

*Flaherty & Crumrine Preferred Income
Fund Incorporated, et al. v. Killinger, et al.*,
No. C09-1756 MJP

Lead Case No. C08-387 MJP

18

19

20

21

22

23

24

25

26

27

28

**INITIAL PURCHASER DEFENDANTS'**
**MOTION TO DISMISS AMENDED**
**COMPLAINT**, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

1
2

**TABLE OF CONTENTS**

3

Page

I.      Introduction and Summary of Argument ........................................................................1

II.     Statement of Facts ...........................................................................................................3

III.    Argument .........................................................................................................................6

        A.      Pleading Standards ..............................................................................................6

        B.      Plaintiffs Fail to Plead a Claim for Negligence. .................................................6

                1.      Plaintiffs Lack Privity with Defendants Credit Suisse and
                        Morgan Stanley and, therefore, Lack Standing to Sue. .........................7

                2.      The AC Improperly Contends that the Initial Purchasers
                        Owed a Legal Duty to Investors to Perform Due Diligence. ................8

                3.      Plaintiffs Fail to Plead that Initial Purchasers Breached any
                        Alleged Duty of Care. ............................................................................9

                        a)      Plaintiffs Fail to Allege what Investigation Was
                                Required but Not Performed. .......................................................9

                        b)      The Initial Purchasers' Alleged Due Diligence in
                                Other Offerings Is Irrelevant. ...................................................10

                        c)      Plaintiffs' Allegations Regarding Expertise in the
                                Residential Mortgage Market Are Irrelevant. ...........................10

                4.      Plaintiffs Cannot Sue for General Negligence where their
                        Claim Is Based on Misrepresentations. .................................................12

                5.      California Law Limits the Initial Purchasers' Liability for
                        Public Policy Reasons based on their Secondary Role. .......................12

        C.      Plaintiffs Fail to Plead a Claim for Negligent Misrepresentation ...................13

                1.      Plaintiffs Fail to Allege how the Initial Purchasers Should
                        Have Discovered the Alleged Misstatements. ......................................14

                2.      Plaintiffs Do Not Plead what Additional Investigation Was
                        Required of the Initial Purchasers. .......................................................15

                3.      Plaintiffs Explicitly Disclaimed Reliance on any Statement
                        by the Initial Purchasers. .....................................................................16

        D.      Plaintiffs Cannot Maintain their Sixth Cause of Action Pursuant to
                California Corp. Code Sections 25401 and 25501 against Goldman
                Sachs. .................................................................................................................17

                1.      Plaintiffs Must Plead this Cause of Action with Particularity. ............17

                2.      Plaintiffs Fail to Plead that the Securities Were Offered or
                        Sold in California. ................................................................................17

**INITIAL PURCHASER DEFENDANTS'**
**MOTION TO DISMISS AMENDED**
**COMPLAINT**, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page i

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

# Table of Contents

## (Continued)

Page

3. The AC Affirmatively Concedes that Goldman Sachs Was Not Aware of, And Was under No Duty to Investigate, the Alleged Misrepresentations in the Offering Circulars. .........................19

E. Plaintiffs' Aiding and Abetting Claim against the Initial Purchasers Fails. ...........................................................................................20

1. No Primary Violation Is Alleged. .......................................................21

2. Plaintiffs Fail to Plead Knowledge by any of the Initial Purchasers of any Underlying Breach of Duty. ................................21

3. Plaintiffs Fail to Plead Substantial Assistance. ...................................21

4. The Aiding and Abetting Allegations Are Hopelessly Vague. .............23

F. All Claims against the Initial Purchasers Must Be Dismissed Because Plaintiffs Do Not Allege Economic Loss. .........................................23

IV. Conclusion ........................................................................................................24

**INITIAL PURCHASER DEFENDANTS'**
**MOTION TO DISMISS AMENDED**
**COMPLAINT**, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page ii

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Activision Sec. Litig.*,
   621 F. Supp. 415 (N.D. Cal. 1985)..................................................................18, 19, 20

*AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*,
   646 F. Supp. 2d 385 (S.D.N.Y. 2009) ............................................................................23

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*,
   158 Cal. App. 4th 226 (2007) ...............................................................................13, 23

*Armstrong v. McAlpin*,
   699 F.2d 79 (2d Cir. 1983) ...........................................................................................21

*Ashcroft v. Iqbal*,
   566 U.S. __, 129 S. Ct. 1937 (2009)...........................................................................3, 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................6, 7, 11

*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*,
   131 Cal. App. 4th 802 (2005) .......................................................................................22

*Biakanja v. Irving*,
   49 Cal. 2d 647 (1958) ...............................................................................................7, 8

*Bily v. Arthur Young  Co.*,
   3 Cal. 4th 370 (1992) ....................................................................7, 8, 12, 13, 14, 16

*Casey v. U.S. Bank Nat. Assn.*,
   127 Cal. App. 4th 1138 (2005) ...............................................................................21, 22

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
   590 F.3d 806 (9th Cir. 2010) ..........................................................................................6

*Chase Manhattan Bank, N.A. v. Fidata Corp.*,
   700 F. Supp. 1252 (S.D.N.Y. 1988) ..............................................................................22

*Continental Airlines, Inc. v. McDonnell Douglas Corp.*,
   216 Cal. App. 3d 388 (1989) .........................................................................................14

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ...............................................................................14, 18

*Diamond Multimedia Sys. v. Super. Ct.*,
   19 Cal. 4th 1036 (1999) ...............................................................................................17

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005).......................................................................................................12

*Edwards & Hanly v. Wells Fargo Securities Clearance Corp.*,
   602 F.2d 478 (2d Cir. 1979) ..........................................................................................22

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994) ............................................................................................24

*Friedman v. Merck & Co.*,
   107 Cal. App. 4th 454 (2003) ........................................................................................12

**INITIAL PURCHASER DEFENDANTS'**
**MOTION TO DISMISS AMENDED**
**COMPLAINT**, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page i

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

Gibson, Dunn &
Crutcher LLP

**Table of Contents**

**(Continued)**

Page

*Gerard v. Ross*,
204 Cal. App. 3d 968 (1988) ...................................................................................21

*Hahn v. Mirda*,
147 Cal. App. 4th 740 (2007) ...................................................................................8

*Harrison v. Enventure Capital Group*, Inc.,
666 F. Supp. 473 (W.D.N.Y. 1987).........................................................................22

*Howard v. Superior Court*,
2 Cal. App. 4th 745 (1992) ...............................................................................21, 22

*Hudson v. Sherwood Sec. Corp.*,
1987 U.S. Dist. LEXIS 16019 (N.D. Cal. 1987) ............................................17, 18, 19

*Huggins v. Longs Drug Stores California, Inc.*,
6 Cal. 4th 124 (1993) ...............................................................................................7

*In re AOL Time Warner Sec. & "ERISA" Litig.*,
381 F. Supp. 2d 192 (S.D.N.Y. 2004) .....................................................................23

*In re Broderbund/Learning Co. Sec. Litig.*,
294 F.3d 1201 (9th Cir. 2002) .................................................................................23

*In re Convergent Technologies Sec. Litig.*,
948 F.2d 507 (9th Cir. 1991) .....................................................................................6

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) .....................................................................................5

*In re Victor Technologies Sec. Litigation*,
102 F.R.D. 53 (N.D. Cal. 1984)................................................................................18

*In re Washington Mutual, Inc. Sec., Derivative & ERISA Litig.*,
2009 U.S. Dist. LEXIS 109961 (W.D. Wash. Oct. 5, 2009)....................................3, 16, 19

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys.*,
2005 U.S. Dist. LEXIS 43317 (N.D. Cal. 2005) ......................................................14

*Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*,
2008 U.S. Dist. LEXIS 87646 (N.D. Cal. 2008) ..................................................6, 14

*Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*,
652 F. Supp. 2d 576 (2009) .....................................................................................24

*M&T Bank Corp. v. Gemstone CDO VII, Ltd.*,
891 N.Y.S.2d 578 (N.Y. App. Div. 2009) ...............................................................17

*McFarland v. Memorex Corp.*,
96 F.R.D. 357 (N.D. Cal. 1982)..........................................................................17, 19

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ...................................................................................3

*Michelson v. Camp*,
72 Cal. App. 4th 955 (1999) .....................................................................................12

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page ii

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

**Table of Contents**

**(Continued)**

Page

*MTC Elec. Tech. Co., Ltd. v. Leung,*
876 F. Supp. 1143 (C.D. Cal. 1995) .................................................................17

*National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs.*
*Group, Inc.,*
171 Cal. App. 4th 35 (2009) ...........................................................................13

*Neubronner v. Milken,*
6 F.3d 666 (9th Cir. 1993) ................................................................................14

*Northwestern Mut. Life Ins. Co. v. Banc of Am. Sec. LLC,*
254 F. Supp. 2d 390 (S.D.N.Y. 2003) ...............................8, 10, 12, 16, 20

*Nutmeg Sec. v. McGladrey & Pullen,*
92 Cal. App. 4th 1435 (2001) .........................................................................13

*Panther Partners, Inc. v. Ikanos Communs., Inc.,*
538 F. Supp. 2d 662 (S.D.N.Y. 2008) ..............................................................6

*Ross v. Bolton,*
639 F. Supp. 323 (S.D.N.Y. 1986) ..................................................................22

*Sanchez v. Lindsey Morden Claims Services, Inc.,*
72 Cal. App. 4th 249 (1999) .............................................................................7

*Schaps v. R.A. Transp. Services, Inc.,*
1987 U.S. Dist. LEXIS 4756 (N.D. Ill. 1987) ...............................................16

*Scognamillo v. Credit Suisse First Boston LLC,*
2005 U.S. Dist. LEXIS 7162 (N.D. Cal. 2005) ................................................6

*Semegen v. Weidner,*
780 F.2d 727 (9th Cir. 1985) ..........................................................................15

*Vanguard Mun. Bond Fund, Inc. v. Cantor,*
40 F. Supp. 2d 183 (S.D.N.Y. 1998) ..............................................................12

*Weiszmann v. Kirkland & Ellis,*
732 F. Supp. 1540 (D. Colo. 1990)..................................................................23

*William O. Gilley Enters. v. Atl. Richfield Co.,*
588 F.3d 659 (9th Cir. 2009) ............................................................................6

*Yucyco, Ltd. v. Republic of Slovenia,*
984 F. Supp. 209 (S.D.N.Y. 1997) ..................................................................23

**Statutes**

Cal. Corp. Code § 25008(b)..............................................................................18

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1248
(3d ed. 2009)....................................................................................................23

6 Witkin, Summary of California Law 8th (1974) ...............................................18

INITIAL PURCHASER DEFENDANTS'        GIBSON, DUNN & CRUTCHER LLP        K&L GATES LLP
MOTION TO DISMISS AMENDED            333 SOUTH GRAND AVENUE            925 FOURTH AVENUE, SUITE 2900
COMPLAINT, No. C09-1756 MJP          LOS ANGELES, CA 90071-1512        SEATTLE, WA 98104-1158
(No. 2:08-md-1919 MJP)      Page iii  Phone: (213) 229-7000             Phone: (206) 623-7580

Gibson, Dunn &
Crutcher LLP

## Table of Contents

## (Continued)

Page

9 Witkin, Summary of California Law 10th (2005) § 411 ................................................18, 19

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................................6, 14

**INITIAL PURCHASER DEFENDANTS'**
**MOTION TO DISMISS AMENDED**
**COMPLAINT**, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)         Page iv

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

The Defendant Initial Purchasers[1] respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint (the "AC").

## I.    Introduction and Summary of Argument

Plaintiffs in this action are sophisticated investors—self-professed specialists in preferred securities—that allege damages from their purchases of two non-registered classes of Washington Mutual Preferred Funding Trust Securities issued on March 7, 2006 and October 25, 2007 (the "Trust Securities").  AC ¶ 1; Request for Judicial Notice ("RJN") Ex. C.  They claim that the two offering circulars, pursuant to which they bought the Trust Securities, contained material misrepresentations and omissions, and that the Initial Purchasers are liable for having failed to discover them.[2]  AC ¶ 24.

Plaintiffs grossly misstate the role and obligations of the Initial Purchasers in these *private* offerings of securities under Rule 144A, which were exempt from SEC registration and disclosure requirements.  17 C.F.R. § 230.144A (2010).  Goldman Sachs, Credit Suisse and Morgan Stanley acted only as initial purchasers, *not* as underwriters.  Both offering circulars, which are incorporated into the AC by reference (although Plaintiffs omitted relevant portions in AC Exhibit A), *explicitly* stated that Washington Mutual, Inc., and its affiliated entities (collectively "WaMu")—*not* the Initial Purchasers—provided the information contained in the offering circulars.  Moreover, the Initial Purchasers specifically

---

[1] Defendants Goldman, Sachs & Co. ("Goldman Sachs"), Credit Suisse Securities (USA) LLC ("Credit Suisse"), and Morgan Stanley & Co. Incorporated ("Morgan Stanley") will be collectively referred to as the "Initial Purchasers."  The entities respond only on behalf of themselves and not any alleged affiliate.

[2] The claims against the Initial Purchasers are asserted solely under state law.  In  this motion, the Initial Purchasers cite cases decided under California law, where this case was first filed, even though it appears that any purchase and sale of trust securities would have occurred in New York, and the Offering Circulars pursuant to which the securities were sold expressly stated that the sales in question were governed by Delaware law.  RJN Ex. A at 16 and 66, Ex. B at 19 and 94.  However, the legal principles discussed are fundamental to the relevant claims under any conceivably applicable law.   Nonetheless, Initial Purchasers reserve the right to argue that a choice of law other than California applies to these state law claims.

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 1

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

Gibson, Dunn &
Crutcher LLP

*disclaimed* any representation or warranty as to the accuracy or completeness of any information in the offering circulars, and subsequent purchasers such as Plaintiffs here contractually agreed that in making their purchase decisions, *they were not relying on any statements by the Initial Purchasers*.  RJN Ex. A at i, Ex. B at i.  These indisputable facts dispose of any possible argument that the Initial Purchasers had any legal duty to these Plaintiffs to investigate WaMu in connection with their limited role in these two offerings, or that these Plaintiffs could have reasonably relied on any alleged statements by the Initial Purchasers.

Despite these express disclaimers, Plaintiffs argue that, had the Initial Purchasers done "any reasonable investigation into the veracity of the statements contained in the Offering Circulars," the alleged misstatements in the offering circulars and elsewhere would have been "clear" to the Initial Purchasers.  AC ¶ 7.  In so arguing, however, Plaintiffs decline to allege that the Initial Purchasers were on notice of any red flags, or other indication of wrongdoing, and stress that "Plaintiffs do *not* allege the Initial Purchasers were knowing participants in the fraudulent scheme perpetrated by the Officer Defendants."  AC ¶ 50.

As more fully discussed below, each of Plaintiffs' state law claims against the Initial Purchasers must be dismissed, on the following grounds:

- The AC fails to allege a cognizable legal theory for imposing any legal duty of affirmative "due diligence" on the Initial Purchasers in connection with these Rule 144A exempt transactions, particularly in light of the express disclosures and disclaimers in the Offering Circulars.  As such, Plaintiffs have not pled a plausible basis for their negligence claim as required by *Bell Atlantic Corp. v. Twombly*.

- Plaintiffs fail to allege privity with either Credit Suisse or Morgan Stanley, which is fatal to their negligence claims against those defendants.

- Plaintiffs' negligence claim is contrary to public policy under the California Supreme Court decision in *Bily v. Arthur Young & Co.*, because the Initial Purchasers are not alleged to have played a primary role in the private offerings of securities at issue.

- Plaintiffs' negligence claim is precluded under *Bily* where, as here, Plaintiffs also sue for

Gibson, Dunn & Crutcher LLP

**INITIAL PURCHASER DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 2

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

negligent misrepresentation.

- Plaintiffs fail to allege a claim for negligent misrepresentation against any Initial Purchaser with the requisite particularity, because Plaintiffs have not pled any particularized facts demonstrating that the Initial Purchasers discovered, or should have discovered, WaMu's alleged misstatements in the offering circulars.  Further, because Plaintiffs admittedly were sophisticated investors—a prerequisite to their being allowed to purchase these Trust Securities—and contractually disclaimed any reliance on statements from any source other than WaMu, they cannot establish that they reasonably relied on any representations made by the Initial Purchasers.

- Plaintiffs do not allege a claim against Goldman Sachs under the California Corporations Code, because they fail to allege any transaction in California and because the AC affirmatively pleads that Goldman Sachs was not aware of, and was under no duty to investigate, the alleged misstatements.

- The AC fails to allege its aiding and abetting claim with particularity.  Nor does it claim that the Initial Purchasers acted with knowledge of an underlying breach or that their routine role as Initial Purchasers constituted substantial assistance.

- The AC fails to plead that Plaintiffs suffered economic loss.  Because Plaintiffs do not allege that they did not receive the consideration they bargained for, they have not pled that they suffered any compensable damages.

## II.    Statement of Facts[3]

Flaherty & Crumrine, Inc., is "an investment advisor specializing in the management

---

[3]  For the purposes of the present motion to dismiss, the Court may accept as true all well-pleaded allegations in the Amended Complaint and other judicially noticeable facts.  Further, since the allegations in the AC all are based upon the offering circulars issued in connection with the issuance of the Trust Securities, the Court may take judicial notice of all of the terms of the Offering Circulars and the underlying Purchase Agreements upon which Plaintiffs based their purchase decisions.  *See In re Washington Mutual, Inc. Sec., Derivative & ERISA Litig.*, 2009 U.S. Dist. LEXIS 109961, *22-23 (W.D. Wash. Oct. 5, 2009).  While ***facts*** pled must be taken as true, the Court must not credit Plaintiffs' conclusory allegations and unsupported assertions.  *See Ashcroft v. Iqbal*, 566 U.S. __, 129 S. Ct. 1937, 1950 (2009); *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).

---

Gibson, Dunn & Crutcher LLP

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 3

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

of preferred securities." RJN Ex. C. They boast of a "dedicated credit research team that performs comprehensive analysis of the risks faced by preferred securities holders." *Id*. Ex. D. It manages five closed-end funds that invest primarily in preferred stocks. *Id*. Ex. E.

Plaintiffs claim to have bought the WaMu "Trust Securities" in private placements on March 7, 2006 and October 25, 2007, "in reliance upon false and misleading statements in the offering documents…which also expressly incorporated by reference additional false and misleading statements made in Washington Mutual's filings with the SEC, among others." AC ¶ 4. The offering circulars that contained the terms of the private placement stated that delivery was to take place and payment would be made in New York. AC, Ex. A; *see also* RJN Exs. A and B (cover pages).

The offering circulars and incorporated public filings allegedly made statements that:

> Washington Mutual (i) adhered to prudent underwriting standards; (ii) utilized independent, fair appraisals; (iii) encouraged proactive risk management; (iv) maintained effective internal controls; and (v) reported financial results in compliance with Generally Accepted Accounting Principles ("GAAP").

AC ¶ 7. Plaintiffs allege that "[i]n truth, Washington Mutual had secretly abandoned its purportedly prudent underwriting standards and was fraudulently inflating appraisals in order to artificially inflate loan volumes and publicly reported earnings." *Id*. ¶ 8. "Washington Mutual's true financial condition and business practices began to come to light only days after Defendants completed the 2007 Offering on or about October 25, 2007," when "on November 1, 2007, New York Attorney General Andrew Cuomo filed a lawsuit – after an extensive nine month investigation involving the review of millions of documents…." *Id*. ¶¶ 12, 81, 86.

Plaintiffs allege no connection between WaMu's alleged fraud and Goldman Sachs, Credit Suisse, and Morgan Stanley. Their only role was to serve as initial purchasers in the private placements, a role in which they bought the Trust Securities and then resold them to qualified institutional buyers ("QIBs"). AC ¶¶ 115-16. The Initial Purchasers are not alleged to have offered any opinion on the trust securities, and the offering circulars specifically state that all information was provided by WaMu, and not the Initial Purchasers. RJN Ex. A at i, Ex. B at i. Nor are the Initial Purchasers even alleged to have had any knowledge of the

Gibson, Dunn &
Crutcher LLP

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)       Page 4

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

underlying fraud; indeed the AC maintains otherwise.  AC ¶ 50.

Moreover, the offering circulars make clear—so Plaintiffs must be deemed to concede—that each purchaser was a sophisticated purchaser capable of making its own investment decisions, which is the entire premise of a Rule 144A offering.  Each purchaser of the securities represented, *inter alia*, that it is: (1) a "qualified institutional buyer" within the meaning of Rule 144A of the Securities Act and is aware that the sale of the Trust Securities was "being made in reliance on Rule 144A or another exemption from the registration requirements of the Securities Act, and (2) a "qualified purchaser" within the meaning of Section 2(a)(51) of the Investment Company Act and "is aware that WaMu Delaware will not be registered under the Investment Company Act…and that the Trust Securities have not and will not be registered under the Securities Act."  RJN Ex. A at iii, Ex. B at iii.  Each purchaser further agreed by accepting the terms of the offering circulars that "*nothing contained in this offering circular is, or shall be relied upon as, a promise or representation by the Initial Purchasers*."  *Id.* Ex. A at i, Ex. B at i.

Plaintiffs also were on notice that these investments were inherently risky.  The offering circulars explicitly disclosed that the securities were expected to receive a "BBB" rating by Standard & Poor's Rating Services, the lowest possible investment grade rating.  RJN Ex. A at 100, Ex. B at 132.  They also detailed the risk involved, specifically identifying the type of economic conditions that might negatively affect the value of the underlying assets, including recession, interest rate levels, and the availability of credit.  *Id*. Ex. A at 25, Ex. B at 31-32.  The offering circulars also explained that the risk was increased, because the mortgage-backed assets were highly concentrated in certain geographic regions.  *Id*. Ex. A at 25, Ex. B at 34.  These and other warnings to investors, including those in WaMu's securities filings, which were incorporated by reference into the offering circulars (*Id*. Ex. A at xi, Ex. B. at xi), "bespoke caution," and bar the claims alleged here.[4]

---

[4]  *See, e.g.*, *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1409 (9th Cir. 1996) (affirming dismissal under bespeaks caution doctrine because "investors were specifically and adequately cautioned about the relevant risks"); *In re Convergent Technologies Sec. Litig.*,

[Footnote continued on next page]

---

Gibson, Dunn & Crutcher LLP

**INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT**, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 5

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

## III.   Argument

### A.   Pleading Standards

For claims subject to the pleading standards of Rule 8(a), the Supreme Court has recently emphasized that to survive dismissal, a complaint must allege enough facts to state a claim to relief that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.   "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.   "Plaintiff must therefore allege 'plausible grounds to infer' that its claims of misstatement or omission rise 'above the speculative level.'" *Panther Partners*, *Inc. v. Ikanos Communs.*, *Inc.*, 538 F. Supp. 2d 662, 667 (S.D.N.Y. 2008) (quoting *Twombly*, 550 U.S. at 555-56).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949; *see also Caviness v. Horizon Cmty. Learning Ctr.*, *Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010); *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 667-668 (9th Cir. 2009).

Plaintiffs' causes of action for negligent misrepresentation, aiding and abetting, and under the California Blue Sky laws sound in fraud, and therefore must be pled with particularity under Rule 9(b).   *See*, *e.g.*, *Landmark Screens, LLC v. Morgan*, *Lewis & Bockius LLP*, 2008 U.S. Dist. LEXIS 87646, *22-23 (N.D. Cal. 2008); *Scognamillo v. Credit Suisse First Boston LLC*, 2005 U.S. Dist. LEXIS 7162, *19-20 (N.D. Cal. 2005); *see also* Fed. R. Civ. P. 9(b).

### B.   Plaintiffs Fail to Plead a Claim for Negligence.

The AC proceeds from the flawed assumption that the Initial Purchasers had a legal

---

[Footnote continued from previous page]
948 F.2d 507, 515-16 (9th Cir. 1991) (holding that a prospectus was not materially misleading because it "virtually overflows with . . . repeated emphasis of significant risk factors").

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 6

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

Gibson, Dunn &
Crutcher LLP

duty to investors, failed to take some required action and, had they taken the required action, could have discovered WaMu's alleged misrepresentations and omissions. This theory, built entirely on speculation and a misunderstanding of the legal requirements of initial purchasers in a private placement, is insufficient to plead that they were in privity with each of the Initial Purchasers, that the Initial Purchasers owed a legal duty to Plaintiffs, that they breached such a duty, and that they were a cause of an injury to Plaintiffs. *See Twombly*, 550 U.S. at 555-56.

### 1.   Plaintiffs Lack Privity with Defendants Credit Suisse and Morgan Stanley and, therefore, Lack Standing to Sue.

Plaintiffs cannot maintain a negligence cause of action against Credit Suisse and Morgan Stanley for the threshold reason that they have not pled that they are in privity with those defendants. "The determination of whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors." *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958). The enumerated factors attempt to "define a narrow and circumscribed class of persons to whom and for whom representations are made," thus "recogniz[ing] commercial reality by avoiding both unlimited and uncertain liability for economic losses" for information providers. *Bily v. Arthur Young Co.,* 3 Cal. 4th 370, 408 (1992); *see also Huggins v. Longs Drug Stores California, Inc.*, 6 Cal. 4th 124, 131-132 (1993) (no liability absent privity with pharmacist); *Sanchez v. Lindsey Morden Claims Services, Inc.*, 72 Cal. App. 4th 249, 253-56 (1999) (no liability absent privity with insurance adjuster).

Here, an analysis of the relevant factors demonstrates that liability should not be extended to Credit Suisse and Morgan Stanley. First, those two entities merely served as conduits for the sale of private securities to qualified institutional investors, and they explicitly disclaimed any investigation or warranty. *Bily*, 3 Cal. 4th at 400-01 (refusing to impose liability out of proportion to defendant's fault); *see also Biakanja*, 49 Cal. 2d at 650 (weighing the "closeness of connection between the defendant's conduct and the injury suffered" and the "moral blame" attached to defendant's conduct as factors in determining liability in the absence of privity). Second, Plaintiffs are sophisticated institutional investors

---

Gibson, Dunn & Crutcher LLP

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)        Page 7

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

capable of more efficiently allocating the risk of investment decisions through contract law. *See Bily*, 3 Cal. 4th at 403, 409 ("As a matter of economic and social policy, third parties should be encouraged to rely on their own prudence, diligence, and contracting power, as well as other informational tools.  This kind of self-reliance promotes sound investment and credit practices…").  An Initial Purchaser is not "an insurer…of bad loans and investments in general."  *Id*. at 403.  Third, extending liability to Initial Purchasers that facilitate private offerings based on information the issuer provided will not result in increased accuracy of information in the market, and would expand liability out of proportion to their alleged fault. *Id.* at 389-92, 399-404, 405 n.15; *see also Biakanja*, 49 Cal. 2d at 650.  Under these circumstances, public policy does not favor extending negligence liability to Initial Purchasers that played such a limited role in providing information to potential investors absent privity.

### 2.    The AC Improperly Contends that the Initial Purchasers Owed a Legal Duty to Investors to Perform Due Diligence.

To establish negligence, the evidence must show that the alleged wrongdoer owed some duty of care to the person injured.  *Hahn v. Mirda*, 147 Cal. App. 4th 740, 745 (2007).  Here, however, the Initial Purchasers owed no such legal duty.

There is no common law duty of due diligence, which "is a defense to an underwriter's liability rather than an obligation owed to purchasers."  *Northwestern Mut. Life Ins. Co. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 390, 401 (S.D.N.Y. 2003).  As the *Northwestern* court held, initial purchasers have no duty to investigate the underlying business operations in connection with the private offering of an unregistered security.  *Id.*  Moreover, in determining that there was no liability for the alleged misrepresentations, that court noted that, as here, the offering materials "made it clear that the defendants were not the source of the information and contained numerous disclaimers."  *Id.*  As discussed more fully below, the Initial Purchasers expressly conditioned any purchase of the Trust Securities on the basis that all information set forth in the Offering Circulars was provided only by WaMu, not the Initial Purchasers, and expressly provided that subsequent purchasers could not rely on any statement by the Initial Purchasers.  These factors entirely vitiate any alleged legal duty that

the Initial Purchasers owed to Plaintiffs.

### 3. Plaintiffs Fail to Plead that Initial Purchasers Breached any Alleged Duty of Care.

Plaintiffs allege that, because the Initial Purchasers were sophisticated entities that conducted business related to the housing mortgage market, they should have been able to—indeed, required to—prevent WaMu from making the alleged misrepresentations and omissions. However, the allegations are too vague to offer facts constituting a plausible basis for their claim that the Initial Purchasers breached any duty of ordinary care.

### a) Plaintiffs Fail to Allege what Investigation Was Required but Not Performed.

The AC alleges that the Initial Purchasers "collectively participated in the review and drafting of the Offering Circulars, solicited sales of the Offerings, and identified themselves as initial purchasers for the Offerings." AC ¶ 115. And, in conclusory fashion, the AC states that "[t]he Initial Purchaser Defendants had a duty to discover and compel disclosure of material facts about the Offerings, as well as to ensure that statements in the offering circulars, as well as those materials incorporated by reference, were truthful and complete." *Id*. ¶ 117. The AC then goes on to list seven alleged misstatements made by WaMu, and states, without any factual basis, that:

> The Initial Purchaser Defendants should have known, among other things, that WaMu's mortgage loans were being carried on WaMu's balance sheet at exceedingly high valuations with improper allowances for loan losses as a result of the significant risk the loans would not be repaid. Accordingly, the Initial Purchaser Defendants disseminated false and misleading information to Plaintiffs in the Offering Circulars and the documents incorporated by reference.

*Id*. ¶ 118. The AC lacks any specifics regarding *how* the Initial Purchasers should have discovered these allegedly improper valuations in the course of their work on the private placements. It merely states: "Had the Initial Purchasers conducted a reasonable investigation at the time of the 2006 and 2007 Offerings, the true, but undisclosed, facts would have been readily apparent to them." *Id*. ¶ 119.

Gibson, Dunn &
Crutcher LLP

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 9

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

### b)   The Initial Purchasers' Alleged Due Diligence in Other Offerings Is Irrelevant.

Plaintiffs allege that, because the Initial Purchasers underwrote other unspecified offerings of WaMu securities, they must have had access to inside information regarding the credit quality of WaMu's loans through the diligence required by those public offerings.  AC ¶¶ 123-25.  Plaintiffs further argue that, based on that diligence, they should have determined that the offering circulars contained material misstatements and omissions.  These arguments are meritless for two reasons.

*First*, such allegations do not indicate any breach of a duty *to Plaintiffs*, who do not allege they bought securities in any public offering in which the Initial Purchasers served as underwriters.  AC ¶ 1.  Because, as discussed above, this was an offering to QIBs exempted under Rule 144A, and because the offering circular specifically stated that all information was provided by WaMu, Plaintiffs cannot claim that the Initial Purchasers breached any duty to them by failing to do sufficient diligence in a completely separate securities offering. *Northwestern Mut. Life*, 254 F. Supp. 2d at 401.  There is no basis for the assumption that an initial purchaser's work as an underwriter in entirely unrelated offerings creates liability to Plaintiffs.  Indeed, such a requirement would dramatically broaden the scope of liability for initial purchasers, precisely the opposite of the intention of Rule 144A.

*Second,* Plaintiffs' suggestion that the Initial Purchasers "should have known" of alleged misrepresentations is based on generic and unidentified internal WaMu analyses, quality control reviews, and other unspecified "WaMu documents."  AC ¶¶ 118, 123-125. Plaintiffs do not allege facts indicating that those unspecified documents would have revealed the alleged misrepresentations.  Plaintiffs even allege that some of the underlying loan documents themselves contained false information inconsistent with the "truth." *Id.* ¶¶ 80-86.

### c)   Plaintiffs' Allegations Regarding Expertise in the Residential Mortgage Market Are Irrelevant.

Plaintiffs also argue that the Initial Purchasers, particularly Goldman Sachs, should have discovered the alleged fraud, because they had "extensive business operations within the

Gibson, Dunn & Crutcher LLP

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 10

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

residential mortgage market" and "were knowledgeable of" industry standards and that market. AC ¶ 121.  These allegations regarding the supposed institutional views of Goldman Sachs bear no relation to Plaintiffs' allegations that WaMu's lending standards were too loose.  Managing its overall risk from exposure to the subprime mortgage market is not the same thing as knowing (much less negligently disregarding) that WaMu's lending standards were not as reported.  This slippage does not plead a cause of action.  *Twombly*, 550 U.S. at 555-56.

Plaintiffs' theory of the case is illogical.  For example, Plaintiffs allege that, based on Goldman Sachs's view of the national housing market, it "should have known…that WaMu's mortgage loans were being carried on WaMu's balance sheet at exceedingly high valuations with improper allowances for loan losses as a result of the significant risk the loans would not be repaid."  AC ¶ 118.  This conclusion simply does not follow.  Investors' assessments of entirely public macroeconomic housing trends have nothing to do with whether there was undisclosed material information, much less a fraud, at WaMu.  There is a fundamental difference between being uncertain as to the direction of the housing markets, and therefore reducing exposure to mortgage-backed securities (and indeed, the financially sophisticated Plaintiffs were free to make their own macroeconomic judgments regarding the market), and knowing that WaMu had not disclosed essential facts regarding its underwriting practices.[5] Allegations that Goldman Sachs allegedly was reducing its own exposure to the subprime lending market do not imply that the Initial Purchasers violated any duty to Plaintiffs or negligently failed to uncover the alleged misrepresentations in these particular private offering

---

[5]  Nor is it logical that "Goldman Sachs's negligence in failing to discover and disclose that WaMu was carrying loans on its balance sheet at excessive valuations without adequate allowances for loan losses is evidenced by Goldman Sachs's own trading and trading recommendations."  AC ¶ 129.  This paragraph incoherently suggests that Goldman Sachs *failed to discover* information, but that such information somehow affected its trading. Clearly, the most plausible inference to be derived from Plaintiffs' theory that Goldman Sachs "failed to discover" the true facts is that such information hardly could have fueled Goldman Sachs's trading strategies.

documents.[6]

**4.     Plaintiffs Cannot Sue for General Negligence where their Claim Is Based on Misrepresentations.**

The California Supreme Court has held that, when the gravamen of a claim is actual, justifiable reliance on a representation, then plaintiffs cannot recover pursuant to a general negligence theory. *Bily*, 3 Cal. 4th at 413; *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 475 (2003) (treating negligence claim against TB test administrator as negligent misrepresentation claim); *Michelson v. Camp*, 72 Cal. App. 4th 955, 962 (1999) (dismissing negligence claim as duplicative of misrepresentation claim against professional appraiser). Allowing recovery for mere negligence bypasses an essential reliance element of negligent misrepresentation, which "must be argued and considered [] as part of [an] evaluation of the causal relationship between defendant's conduct and plaintiff's injury." *Bily*, 3 Cal. 4th at 413; *see also Northwestern Mut. Life*, 254 F. Supp. 2d at 400-401 (dismissing negligence claims against underwriter as indistinguishable from negligent misrepresentation claims); *Vanguard Mun. Bond Fund, Inc. v. Cantor*, 40 F. Supp. 2d 183, 188 (S.D.N.Y. 1998).

Under these precedents, Plaintiffs' general negligence claim cannot be sustained where, as here, Plaintiffs fail to allege how they were harmed by the Initial Purchasers other than through the alleged misstatements or omissions.

**5.     California Law Limits the Initial Purchasers' Liability for Public Policy Reasons based on their Secondary Role.**

California law limits the negligence liability of information providers for purely economic losses on the basis of public policy. *Bily*, 3 Cal. 4th at 397.   For example, accountants issuing audit reports generally are not liable to third parties, because, in part, "the client typically prepares its own financial statements; it has direct control over and assumes primary responsibility for their contents. . . . Because the auditor cannot in the time available

---

[6] Plaintiffs' allegations regarding the overall market decline in mortgage-backed securities are telling. AC ¶¶ 127-28. Like securities laws, common law tort liability acts "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 12

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

Gibson, Dunn &
Crutcher LLP

become an expert in the client's business and record-keeping systems, the client necessarily furnishes the information base for the audit." *Bily*, 3 Cal. 4th at 399.  Holding auditors liable for negligence for their "secondary" role in preparing audit reports would impose liability "out of proportion to: (1) the fault of the auditor…and (2) the connection between the auditor's conduct and the third party's injury." *Id*. at 402; *see also Nutmeg Sec. v. McGladrey & Pullen*, 92 Cal. App. 4th 1435, 1443 (2001).

Similarly, here, Initial Purchasers fulfilled a secondary role in these private offerings—indeed, a role that was far more limited than the role typically played by an auditor.[7]  The offering circulars expressly advised investors that all the information contained therein originated from Washington Mutual and that Initial Purchasers made no representations or warranties regarding its accuracy.  RJN Ex. A at i, Ex. B at i.  Given this express disclaimer, it would violate California's strong public policy to hold the Initial Purchasers liable for Plaintiffs' alleged injury.  *Bily*, Cal. 4th at 398.

### C.    Plaintiffs Fail to Plead a Claim for Negligent Misrepresentation.

As discussed above, Plaintiffs have failed to plead that the Initial Purchasers had any reason to believe that the offering circulars contained material misstatements or omissions. This defect persists in the essentially identical negligent misrepresentation claim, in that Plaintiffs have not and cannot plead that the Initial Purchasers made any statements without reasonable ground for believing them to be true.[8]

---

[7]  The *Bily* court also refused to expand auditors' tort liability because the class of plaintiffs suing auditors were sophisticated parties that could more efficiently allocate risk by contract law instead of tort law.  *Bily,* 3 Cal. 4th at 402-03.  As QIBs, Plaintiffs were equally capable of allocating risk through contract law.  In fact, the offering circulars expressly allocate risk by identifying Washington Mutual as the source of information contained therein.  RJN Exs. A at i, B at i.

[8]  "The elements of negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'" *National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Group, Inc.*, 171 Cal. App. 4th 35, 50 (2009) (quoting *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007)).

Gibson, Dunn & Crutcher LLP

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 13

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

1    Moreover, Plaintiffs fail to plead their cause of action for negligent misrepresentation

2 with the requisite particularity.   Negligent misrepresentation sounds in fraud in California.

3 *Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388, 403 (1989);

4 *see also Bily*, 3 Cal. 4th at 407; *Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys.*, 2005 U.S. Dist.

5 LEXIS 43317, *30 (N.D. Cal. 2005) ("[N]egligent misrepresentation claim is a fraud claim,

6 not a negligence claim.").   Federal Rule of Procedure 9(b) applies to allegations of negligent

7 misrepresentation in federal court.   *See*, *e.g.*, *Landmark Screens*, 2008 U.S. Dist. LEXIS

8 87646 at *22-23.   Accordingly, Plaintiffs must "*state with particularity* the circumstances

9 constituting fraud or mistake."   Fed. R. Civ. P. 9(b) (emphasis added); *see also Landmark*

10 *Screens*, 2008 U.S. Dist. LEXIS 87646 at *22-23.   The facts required to be pled include the

11 times, dates, people, places, and other relevant details surrounding the alleged fraud.   *See*,

12 *e.g.*, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (requiring allegations that disclose

13 the "who, what, when, where, and how" of the alleged misconduct); *Neubronner v. Milken*, 6

14 F.3d 666, 671-72 (9th Cir. 1993).   Plaintiffs' negligent misrepresentation claim must be

15 dismissed, because it does not plead with particularity that the Initial Purchasers made

16 statements without a reasonable ground for believing them to be true.

### 1.    Plaintiffs Fail to Allege how the Initial Purchasers Should Have Discovered the Alleged Misstatements.

19    The AC identifies seven material facts that the Plaintiffs contend Initial Purchasers

20 "should have known:"

> (i) WaMu did not maintain or comply with underwriting standards and risk
> management procedures; (ii) the Company artificially inflated appraisals to get
> loans approved and to be able to sell the loans to investors; (iii) the true extent
> of the Company's exposure to a decline in the housing market; (iv) the
> Company's true creditworthiness; (v) the Company's ineffectual internal
> controls; (vi) the Company's ineffectual risk management; and (vii) the
> Company's financial statements did not comply with GAAP.

25 AC ¶ 118.   Plaintiffs do not allege facts that explain "who, what, when, where, and how"

26 Initial Purchasers should have acquired knowledge of those alleged facts, and only make the

27 conclusory allegation that "a reasonable investigation" would have somehow revealed that

28 information. *Id.* ¶¶ 7, 119.   This is insufficient to state a claim. *See Semegen v. Weidner*, 780

Gibson, Dunn &
Crutcher LLP

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 14

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

F.2d 727, 731 (9th Cir. 1985). Instead, the AC must explain (1) how the Initial Purchasers should have acquired this knowledge, (2) what non-public information was available to the Initial Purchasers that revealed this information, (3) who within the Initial Purchasers' organizations had access to information, or (4) when the Initial Purchasers should have became aware of the alleged material misstatements. *See id.*

For example, the AC references underlying loan documents, quality control reviews, and other unspecified "internal WaMu documents" to which Plaintiffs claim the Initial Purchasers had "access" in connection with securities offerings in which they acted as underwriters. AC ¶¶ 101-106, 123-125. However, Plaintiffs do not allege that these documents were sufficient to reveal the alleged fraud or even that Initial Purchasers could have requested to review these documents in connection with a private placement. Accordingly, the AC does not provide a factual basis for Plaintiffs' bare allegations that Initial Purchasers should have discovered the fraud supposedly being concealed by WaMu.

Additionally, Plaintiffs allege that Initial Purchasers *should* have known the supposed truth regarding WaMu's financial condition simply because of their industry experience and overall market analysis, which, as discussed above, is irrelevant to the Initial Purchasers' access to information specific to WaMu's mortgage loans. *See* AC ¶¶ 120-22, 126-41. Plaintiffs' allegations that Goldman Sachs's actions to manage down the firm's exposure to mortgage backed securities proved warranted are inapposite—Plaintiffs are not suing Goldman Sachs for failing to disclose market-wide concerns about residential subprime mortgages (which would be unfounded as the firm's research warnings were in fact publicly available, and market trends were equally transparent to everyone), but for allegedly failing to discovery and reveal a fraud at WaMu.

### 2. Plaintiffs Do Not Plead what Additional Investigation Was Required of the Initial Purchasers.

Plaintiffs must specify what required steps the Initial Purchasers allegedly failed to take and how such steps would have resulted in discovery of the information that was allegedly withheld. As discussed above, this was a private placement exempted under Rule

| | | |
|---|---|---|
| **INITIAL PURCHASER DEFENDANTS'** | GIBSON, DUNN & CRUTCHER LLP | K&L GATES LLP |
| **MOTION TO DISMISS AMENDED** | 333 SOUTH GRAND AVENUE | 925 FOURTH AVENUE, SUITE 2900 |
| **COMPLAINT**, No. C09-1756 MJP | LOS ANGELES, CA 90071-1512 | SEATTLE, WA  98104-1158 |
| (No. 2:08-md-1919 MJP)        Page 15 | Phone: (213) 229-7000 | Phone: (206) 623-7580 |

Gibson, Dunn &
Crutcher LLP

144A, and all of the purported misstatements upon which Plaintiffs allegedly relied were provided by WaMu, not the Initial Purchasers:

> *WMI, WMB, University Street, Inc. ("University Street"), the Company, the Trust, Washington Mutual Home Equity Trust I ("Asset Trust I"), WAMU 2006-OA ("Asset Trust II"), WAMU 2007-Flex1 ("Asset Trust III" and together with Asset Trust I and Asset Trust II, collectively, the "Asset Trusts"), and other sources identified herein have provided the information contained in this offering circular. **The Initial Purchasers make no representation or warranty, express or implied, as to the accuracy or completeness of such information, and nothing contained in this offering circular is, or shall be relied upon as, a promise or representation by the Initial Purchasers**…**You agree to the foregoing by accepting delivery of this offering circular.***

RJN Ex. A at i, Ex. B at i (extra emphasis added).  The Court should not accept Plaintiffs' unfounded assertion that the Initial Purchasers were required to do some investigation where there was no legal duty to do so.  *Schaps v. R.A. Transp. Services, Inc.*, 1987 U.S. Dist. LEXIS 4756, *19-23 (N.D. Ill. 1987); *Northwestern Mut. Life*, 254 F. Supp. 2d at 401; *see also Washington Mutual*, 2009 U.S. Dist. LEXIS 109961 at *22 (where documents referenced in a complaint contradict a plaintiff's conclusory allegations, the court is not required to accept those allegations as true).

### 3.  Plaintiffs Explicitly Disclaimed Reliance on any Statement by the Initial Purchasers.

By accepting delivery of the offering circulars, the Plaintiffs specifically agreed to their terms.  RJN Ex. A at i, Ex. B at i.  The provisions that "nothing contained in this offering circular is, or shall be relied upon as, a promise or representation by the Initial Purchasers" (*id.*) were included because, as was explicitly stated, "the information contained in [each] offering circular" was provided by various WaMu entities and *not* the Initial Purchasers.  *Id.* These terms are contractual, and Plaintiffs cannot now claim that they did not, as QIBs, read or understand the terms of the agreement.  Thus, those materials belie any contention that Plaintiffs relied on any statements made by the Initial Purchasers or that the Initial Purchasers intended to induce their reliance on any misrepresented fact.  *See Northwestern*, 254 F. Supp. 2d at 401; *Bily*, 3 Cal. 4th at 402-03, 409.  Indeed, the courts do not impose liability for negligent misrepresentation on initial purchasers when the relevant offering circulars contain

Gibson, Dunn & Crutcher LLP

**INITIAL PURCHASER DEFENDANTS'**
**MOTION TO DISMISS AMENDED**
**COMPLAINT**, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 16

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

1  such limitations and disclaimers regarding reliance and the defendants are not alleged to have

2  acted with scienter.  *See M&T Bank Corp. v. Gemstone CDO VII, Ltd.*, 891 N.Y.S.2d 578,

3  581 (N.Y. App. Div. 2009) (refusing to impose negligent misrepresentation liability on

4  defendants because "the parties had no relationship prior to this arms-length transaction and…

5  [the] offering circulars contained the various limitations and disclaimers").

### D.  Plaintiffs Cannot Maintain their Sixth Cause of Action Pursuant to California Corp. Code Sections 25401 and 25501 against Goldman Sachs.

8  The AC fails to state a claim against Goldman Sachs under California Corporations

9  Code Sections 25401 and 25501, because (1) the AC fails to plead that the securities at issue

10  were offered or sold in California, and (2) Goldman Sachs's reasonable care defense is made

11  out on the face of the complaint.[9]

### 1.  Plaintiffs Must Plead this Cause of Action with Particularity.

13  Because Plaintiffs' claim under sections 25401 and 25501, like their negligent

14  misrepresentation claim discussed above, involves a serious attack on character, it must be

15  pled "with the particularity required for a cause of action based on fraud or

16  misrepresentation."  *MTC Elec. Tech. Co., Ltd. v. Leung*, 876 F. Supp. 1143, 1147 (C.D. Cal.

17  1995) (dismissing Section 24501 claim); *see also Diamond Multimedia Sys. v. Super. Ct.*, 19

18  Cal. 4th 1036, 1043 n.7 (1999).

### 2.  Plaintiffs Fail to Plead that the Securities Were Offered or Sold in California.

20  Section 25401 only applies to securities that were offered or sold "in this state."

21  *McFarland v. Memorex Corp.*, 96 F.R.D. 357, 364 (N.D. Cal. 1982).  Federal courts have

22  strictly applied this pleading requirement, refusing to apply Section 25401 to offers or

23  transactions that were not specifically alleged to have taken place in California.  *Hudson v.

24  Sherwood Sec. Corp.*, 1987 U.S. Dist. LEXIS 16019, *16-18 (N.D. Cal. 1987) (dismissing

25  24501 claim because the securities were offered and sold in New York); *Activision Sec. Litig.*,

26

27

28     [9]  Count six is asserted against Defendant Goldman Sachs only.

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)        Page 17

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

621 F. Supp. 415, 431-32 (N.D. Cal. 1985).

California Corporations Code section 25008 sets out four conditions for when an offer or sale satisfies the "in this state" requirement of Section 25401: (1) "[t]he offer is directed to California and is received at the place to which it is directed," (2) "[t]he offer originates in California," (3) "[t]he acceptance of an offer to buy is communicated to the offeror in California," or (4) "[b]oth seller and purchaser are domiciled in California and the security is delivered to the purchaser in this state. *Hudson*, 1987 U.S. Dist. LEXIS 16019 at *17 (quoting 6 Witkin, Summary of California Law 8th (1974)); *In re Victor Technologies Sec. Litigation*, 102 F.R.D. 53, 60 (N.D. Cal. 1984); *see also* 9 Witkin, Summary of California Law 10th (2005) § 411, p. 1151.   Plaintiffs attempt to allege only the first condition. Accordingly, Plaintiffs must—but do not—plead that the offering circulars were both directed to Plaintiffs in California **_and_** received by Plaintiffs in California.   Cal. Corp. Code § 25008(b).

The AC contains only the unsupported and conclusory statements that "Defendants prepared and issued false and misleading statements transmitted in California" and that Plaintiffs "purchased the…Trust Securities in California."  AC ¶¶ 24, 282.  Plaintiffs do not specify the method Goldman Sachs allegedly used to transmit the offering circulars in California or the date such transmission allegedly occurred.  Nor do the offering circulars, themselves, give any indication that they were transmitted or received in California.  *See* RJN Exs. A and B.   Indeed, their allegation is directly contradicted by the offering circulars themselves, which state that both payment and delivery of the securities would be completed in New York.[10]   The AC thus lacks sufficient detail regarding the "what, when, where and how" of Defendants' supposed transmission into the state of California as required by California law and Federal Rule of Civil Procedure 9(b).  *See Cooper*, 137 F.3d at 627.

---

[10]  The offering circulars (AC, Ex. A; RJN Exs. A and B) state on their cover pages:  "The Initial Purchasers expect to deliver the Trust Securities through the facilities of The Depository Trust Company and Euroclear Bank S.A./N.V., as operator of the Euroclear System, and Clearstream Banking, *société anonyme*, as participants in The Depository Trust Company, in each case against payment in New York, New York…."

The AC also fails to allege that each individual Plaintiff received any "transmission" of the offering circulars in California.  Plaintiffs fail to plead the specific circumstances underlying any receipt of the offering circulars in California, including where and when they were received.  Indeed, at least one Plaintiff, Flaherty & Crumrine Investment Grade Fixed Income Fund, is not even alleged to be a resident of the state.  *See* AC ¶ 24.  This lack of specificity prevents the Court from determining whether the transactions at issue present the California nexus required under the California Corporations Code.  *Hudson*, 1987 U.S. Dist. LEXIS 16019, at *16-18; *see also Activision*, 621 F. Supp. at 431-32.

Moreover, Section 25008 does not recognize a sale as occurring "in this state" unless the offer originated in California or the acceptance was communicated to the offeror in California, neither of which was pled by Plaintiffs.  *See Hudson*, 1987 U.S. Dist. LEXIS 16019, 17; *see also* 9 Witkin, Summary of California Law 10th (2005) § 411, p. 1151.  The allegation that Plaintiffs "purchased the…Trust Securities in California" is directly contradicted by the offering circulars themselves, which state that both payment and delivery of the securities would be completed in New York.  *See Washington Mutual*, 2009 U.S. Dist. LEXIS 109961 at *22.  Plaintiffs have not pled a sufficient nexus with California to pass muster under the California Corporations Code.  *McFarland*, 96 F.R.D. at 364; *Hudson*, 1987 U.S. Dist. LEXIS 16019, at *16-18.

### 3.   The AC Affirmatively Concedes that Goldman Sachs Was Not Aware of, and Was under No Duty to Investigate, the Alleged Misrepresentations in the Offering Circulars.

Section 25401 prohibits the offer or sale of a security in California by means of any oral or written communication that contains materially false or misleading statements.[11] *Activision*, 621 F. Supp. at 427.  "Section 25501 creates the [private] cause of action for a

---

[11]  California Corporations Code section 24501 states:
It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

**INITIAL PURCHASER DEFENDANTS'**
**MOTION TO DISMISS AMENDED**
**COMPLAINT**, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 19

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

violation of § 25401."[12]  *Id*.  Section 25401 states that a defendant will not be liable under sections 25501 and 25401 where it "exercised reasonable care and *did not know…of the untruth or omission*."  *Id*. (emphasis added).

Plaintiffs' AC affirmatively pleads facts demonstrating that Goldman Sachs *did not know* of any alleged misrepresentations in the Offering Circulars.  As discussed above, Goldman Sachs had no duty of diligence or investigation in the private placements at issue. *Northwestern Mut. Life*, 254 F. Supp. 2d at 401.  Because Plaintiffs admit that Goldman Sachs acted only as an Initial Purchaser (AC ¶ 47) and had no knowledge of the alleged material misstatements, and because Goldman Sachs was under *no legal duty to investigate* those alleged misstatements (AC ¶ 50), Plaintiffs' claim under Sections 25401 and 25501 is defective as a matter of law.

### E.    Plaintiffs' Aiding and Abetting Claim against the Initial Purchasers Fails.

The AC contains an aiding and abetting claim collectively asserted against all Defendants, although it is unclear what underlying tort claims each individual defendant is alleged to have aided and abetted.  Regardless, the Initial Purchasers cannot be held liable for aiding and abetting, because they are not alleged to have had knowledge of any underlying breach of duty by the Officer Defendants or to have "substantially assisted" in that breach of duty.  AC ¶ 50.  Further, as pled, the aiding and abetting claim is hopelessly vague and uncertain and does not even approach the particularity of pleading required by Rule 9(b).  The aiding and abetting claims against the Initial Purchasers must therefore be dismissed.

---

[12]  California Corporations Code section 25501 states:
Any person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him, who may sue either for rescission or for damages (if the plaintiff or the defendant, as the case may be, no longer owns the security), unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know (or if he had exercised reasonable care would not have known) of the untruth or omission.

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 20

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

Gibson, Dunn &
Crutcher LLP

### 1. No Primary Violation Is Alleged.

The AC does not even identify the predicate "breach of duty" on which its aiding and abetting claim is alleged, stating only that "Defendants made or participated in making material misrepresentations and omissions that caused primary violations of each other cause of action to occur." AC ¶ 288. This is patently insufficient under Rule 9(b). *Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983).

### 2. Plaintiffs Fail to Plead Knowledge by any of the Initial Purchasers of any Underlying Breach of Duty.

"California courts have long held that liability for aiding and abetting depends on proof the defendant had ***actual knowledge*** of the specific primary wrong the defendant substantially assisted." *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005) (emphasis added); *see also Howard v. Superior Court*, 2 Cal. App. 4th 745, 749 (1992) (aiding and abetting "requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act");[13] *Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (1988). Because Plaintiffs have specifically disclaimed any allegation of knowledge on the part of the Initial Purchasers, they cannot allege a claim for aiding and abetting. *See* AC ¶ 50 ("Plaintiffs do ***not*** allege that Initial Purchasers Defendants were knowing participants in the fraudulent scheme perpetrated by the Officer Defendants."). This allegation is fatal to Plaintiffs' aiding and abetting claims.

### 3. Plaintiffs Fail to Plead Substantial Assistance.

"Aiding-abetting focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct…. [Aiding and abetting] necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the

---

[13]  In order to state a claim for aiding and abetting, it must be alleged with particularity that the tortfeasor "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Casey*, 127 Cal. App. 4th at 1144, 1153. The AC does not allege a theory of liability under the second prong, and as discussed above, it does not plead that the Initial Purchasers breached any duty to Plaintiffs.

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 21

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

Gibson, Dunn &
Crutcher LLP

purpose of assisting another in performing a wrongful act." *Berg & Berg Enterprises*, *LLC v. Sherwood Partners*, *Inc.*, 131 Cal. App. 4th 802, 823 n.10 (2005) (quoting *Howard v. Superior Court*, 2 Cal. App. 4th 745, 748–49 (1992)). Plaintiffs do not and cannot allege that Initial Purchasers played any role in the underlying tortious activity, much less that Initial Purchasers knowingly assisted any defendant in performing a wrongful act.

Initial Purchasers are alleged only to have participated in private financing transactions pursuant to Rule 144A, which involved purchasing securities from Washington Mutual and reselling those securities to QIBs such as Plaintiffs. AC ¶¶ 115-16. Initial Purchasers cannot be held vicariously liable based solely on their business relationship with underlying tortfeasors or performance of routine business services; there must be specific allegations that Initial Purchasers somehow assisted in performing the underlying torts. *Chase Manhattan Bank*, *N.A. v. Fidata Corp.*, 700 F. Supp. 1252, 1263 (S.D.N.Y. 1988) (routine business transaction "are insufficient for the imposition of aider-abetter liability") (citing *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.*, 602 F.2d 478, 484 (2d Cir. 1979); *Harrison v. Enventure Capital Group*, Inc., 666 F. Supp. 473, 477-78 (W.D.N.Y. 1987); and *Ross v. Bolton*, 639 F. Supp. 323, 326-27 (S.D.N.Y. 1986)). The AC contains no such allegations. *See* AC ¶¶ 115-42.

The only California case to consider this issue noted in dicta that "ordinary business transactions" could constitute substantial assistance only if the defendant "actually knew those transactions were assisting the tortfeasor in committing a specific tort." *Casey*, 127 Cal. App. 4th at 1145. As discussed above, the AC disclaims any allegation that the Initial Purchasers had knowledge of the purported underlying tortious activity. AC ¶ 50. Nor does it actually allege that the Initial Purchasers "substantially assisted" any underlying breach of duty. *Id.* ¶¶ 287-91.

Where, as here, Initial Purchasers are not alleged to have taken *any* step to assist WaMu in concealing the business practices that Plaintiffs allege caused its collapse (*e.g.*, the failures of risk management and internal controls), Plaintiffs have not alleged that the Initial Purchasers "substantially assisted" any other defendants in their purported wrongful conduct.

Gibson, Dunn &
Crutcher LLP

**INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT**, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)        Page 22

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

1

### 4.    The Aiding and Abetting Allegations Are Hopelessly Vague.

Pursuant to *Twombly* and *Iqbal*, Plaintiffs' aiding and abetting allegations are insufficient to give Defendants notice of the claim against them.  Plaintiffs allege that the "Defendants" are liable for aiding and abetting the AC's first six causes of action, the state law tort claims, including those alleged against only the Officer Defendants.  AC ¶¶ 287-91. Such undifferentiated allegations addressing "Defendants" as a collective group are insufficient to state a claim against any individual defendant, under any pleading standard.[14] *See*, *e.g.*, *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 219 (S.D.N.Y. 1997) ("a complaint against multiple defendants [must] 'indicate clearly. . . the basis upon which the relief is sought against the particular defendants.'"); *Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540, 1549 (D. Colo. 1990) ("where . . . there are multiple defendants, the complaint should specify what conduct by each defendant gives rise to the asserted claim"); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1248 (3d ed. 2009).  For these reasons, the aiding and abetting claim against the Initial Purchasers must be dismissed.

### F.    All Claims against the Initial Purchasers Must Be Dismissed Because Plaintiffs Do Not Allege Economic Loss.

Finally, the AC should be dismissed for the independent reason that Plaintiffs do not plead a legally cognizable economic loss, an essential element of their claims for damages. *See*, *e.g.*, *Apollo Capital*, 158 Cal. App. 4th at 243 (damages are an element of a negligent misrepresentation claim); *see also In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1203-05 (9th Cir. 2002) (dismissing claims for failure to plead a cognizable loss); *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 646 F. Supp. 2d 385, 403 (S.D.N.Y. 2009); *In re AOL Time Warner Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 246 (S.D.N.Y. 2004).

---

14  "Defendants" are alleged to have aided and abetted in the commission of common law and statutory fraud, negligence, negligent misrepresentation, and making false statements in violation of California Corporations Code sections 25400 and 25500, 24501 and 25501, 25504, and 25504.1.  The insufficiency of these allegations is demonstrated by the absurdity of Defendants collectively being accused of aiding and abetting other defendants' violation of sections 25504 (controlling person liability) and 25504.1 (aiding and abetting), which are themselves derivative of an underlying statutory violation.

Gibson, Dunn & Crutcher LLP

INITIAL PURCHASER DEFENDANTS'     GIBSON, DUNN & CRUTCHER LLP     K&L GATES LLP
MOTION TO DISMISS AMENDED           333 SOUTH GRAND AVENUE          925 FOURTH AVENUE, SUITE 2900
COMPLAINT, No. C09-1756 MJP          LOS ANGELES, CA 90071-1512      SEATTLE, WA 98104-1158
(No. 2:08-md-1919 MJP)        Page 23  Phone: (213) 229-7000          Phone: (206) 623-7580

1
2
3
4
5
6
7
8

Here, Plaintiffs do not allege a cognizable economic loss, because they do not allege that they did not receive any required payment from their Trust Securities while they owned them. Plaintiffs, as holders of the 2006 and 2007 Preferred Trust Securities, were entitled to distributions and redemption and liquidation payments on the securities. AC ¶¶ 2-3; RJN Ex. A at 59-60, Ex. B at 87-88. Plaintiffs could not have reasonably expected any other benefit from the asset-backed securities. RJN Ex. A at 59-60, Ex. B at 87-88. The distribution of cash flows—and not the possibility of market price appreciation—was the sole economic benefit that investors bargained for in purchasing the securities. *Id.*

9
10
11
12
13
14
15
16

Plaintiffs do not allege that they failed to receive payments owed to them while they owned the Trust Securities. Instead, Plaintiffs allege that the "market value of the 2006 and 2007 Preferred Trust Securities declined" and that they purchased the Trust Securities at "artificially inflated" prices. AC ¶¶ 241-42. But Plaintiffs have not and cannot allege a secondary market ever existed for the Trust Securities and, therefore, the securities have no "market value" independent of the right to receive distribution payments. In essence, Plaintiffs seek "damages" for an increase in the risk that the securities will not perform in the future. That kind of speculative injury is simply not actionable.[15]

17

## IV.  Conclusion

18
19

For all the foregoing reasons, Plaintiffs' Amended Complaint must be dismissed as to the Initial Purchasers without leave to amend.

20
21
22
23
24
25
26
27
28

---

[15] *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) ("[The plaintiff] does not allege actual injury by simply claiming that it incurred additional risk of loss as a consequence of the fraud."); *Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 591-94 (2009) (rejecting plaintiffs' argument that high rates of default on underlying mortgage loans, standing alone, caused plaintiffs an economic loss).

Gibson, Dunn &
Crutcher LLP

INITIAL PURCHASER DEFENDANTS'
MOTION TO DISMISS AMENDED
COMPLAINT, No. C09-1756 MJP
(No. 2:08-md-1919 MJP)          Page 24

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

…

1

DATED:  March 5, 2010

2

GIBSON, DUNN & CRUTCHER LLP          K & L GATES LLP

3

Dean J. Kitchens                                      By: /s/   Paul J. Lawrence
4
(*dkitchens@gibsondunn.com*)                      Paul J. Lawrence (WSBA No. 13557)
333 South Grand Avenue                         *paul.lawrence@klgates.com*
5
Los Angeles, CA  90071-3197
6
Phone: (213) 229-7000                           925 Fourth Avenue, Suite 2900
Seattle, WA  98104-1158
7
Jonathan C. Dickey                               Phone:  (206) 623-7580
8
(*jdickey@gibsondunn.com*)
200 Park Avenue                                  Attorneys for Defendants Goldman, Sachs
New York, NY 10166-0193                         & Co., Credit Suisse Securities (USA)
9
Phone: (212) 351-2400                           LLC, and Morgan Stanley & Co.
Incorporated
10

Admitted *pro hac vice*
11

100805079_8.DOC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28